**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| JANE MB DOE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SeaTac Hotels, LLC; G6 Hospitality, LLC; G6 Hospitality IP, LLC; G6 Hospitality Property, LLC; G6 Hospitality Purchasing, LLC; G6 Hospitality Franchising, LLC; Motel 6 Operating, LP; and DOES 1 through 200, inclusive,<br><br>Defendants. | Case No.<br><br>Unlimited Jurisdiction<br><br>**COMPLAINT FOR DAMAGES AND INJURIES**<br><br>**JURY TRIAL DEMAND**<br><br>**Damages in excess of $100,000** |

Plaintiff JANE MB DOE, by and through her undersigned counsel, respectfully submits this complaint for damages and makes the following averments.

## I. INTRODUCTION

1. This case seeks to hold Defendants accountable for their complicity in the sex trafficking of a vulnerable teenage girl. Long after Defendants and their agents and employees knew or should have known that they were renting motel rooms to sex traffickers, and that women and children, including Plaintiff Jane MB Doe, were being held captive, raped and sexual exploited



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

by criminals on Defendants' properties, Defendants and their agents and employees continued to enable and profit from this activity. Defendants moreover failed to take any action to deter, detect or disrupt Plaintiff's trafficking as a minor, instead accommodating their repeat customers and *not once* contacting law enforcement or even checking Plaintiff's ID.

2. For years, sex trafficking ventures have operated openly in the United States, facilitated not only by traffickers and online platforms, but also by hotel and motel properties that provide a convenient and low-risk environment for exploitation. While major hotel companies have publicly professed their commitment to combatting human trafficking, they have simultaneously expanded their network of low-cost motel properties, where trafficking is most prevalent, and continued to profit from the crimes that occur behind their doors.

3. Sex traffickers carry out their operations in plain view, moving victims through motel rooms at all hours of the day and night. Despite clear signs of criminal activity, frequent male visitors, used condoms, cash exchanges, and victims in distress—motel staff and management consistently fail to intervene. Instead of implementing meaningful safeguards, the hotel and motel industry have prioritized profit over protection, enabling traffickers to operate without consequence.

4. Corporate sponsorships, anti-trafficking trainings, and awareness campaigns do not excuse companies that have knowingly benefited from the commercial sexual exploitation of others. These efforts only underscore the fact that the hotel industry has been aware of how its properties are being used and has failed to stop it. Hotels have provided the space, security, and silence that allow sex trafficking to continue. [1]

[1] https://www.mbfpreventioneducation.org/human-trafficking-is-now-the-second-most-profitable- criminal-activity-in-the-united-states/



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

5. As the trafficking industry has expanded, so too have the revenues of motel operators that continue to lease rooms used for the sexual exploitation of victims. Defendants in this case are among those who have profited from renting rooms used for trafficking purposes, including those where Plaintiff Jane MB Doe was exploited as a child.

6. Jane MB Doe brings this action seeking compensation for the harm she suffered as a consequence of being sex trafficked and sold for sex at motels owned, operated, maintained, regulated, and controlled by Defendants and their agents and employees.

## II. PARTIES

7. Jane MB Doe is a natural person who is currently a resident and citizen of the State of Washington. Jane MB Doe is a survivor of sex trafficking. From approximately January 2011 to June 2015, while she was a minor, Jane MB Doe was recruited, harbored and forced to engage in commercial sex acts at Defendant hotels for the benefit of her trafficker and Defendants.

a. Due to the sensitive, private, and potentially retaliatory nature of these allegations, this Complaint identifies Plaintiff by a pseudonym only. Plaintiff will move the Court for permission to proceed under a pseudonym in all filings, public proceedings, and to limit disclosure of information that could reveal her identity.

b. Generally, pleadings must state the name of all parties.[2] However, exceptions exist where the issues involved are highly sensitive and may result in retaliation or harm to the plaintiff.[3]

c. In order to maintain her privacy and safety, Jane MB Doe should not be compelled to disclose her identity. Jane MB Doe's privacy interest substantially outweighs the

---

[2] Fed. R. Civ. P. 10(a).

[3] See WA Cases e.g., Doe v. Penzato, 2011 U.S. Dist. LEXIS 51681, *6-9 (N.D. Cal. May 13, 2011); Roe v. St. Louis Univ., 2009 U.S. Dist. LEXIS 27716, *13, (E.D. Mo. Apr. 2, 2009).



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

customary practice of judicial openness.[4] Jane MB Doe would be in danger of being forced back into trafficking should her trafficker or his associates learn information about her through publicly filed documents in this action. Additionally, Jane MB Doe's life could be put in grave danger should her trafficker or his associates learn information about her through publicly filed documents in this action. Moreover, Defendants will not be prejudiced. Jane MB Doe will agree to reveal her identity to Defendants for the limited purpose of investigating Jane MB Doe's claims once the parties have entered into a protective order.

8. Defendant SeaTac Hotels, LLC is a for-profit Washington corporation with its principal place of business in Seattle, Washington. SeaTac Hotels, LLC owned and operated the Motel 6 hotel located at 18900 47th Avenue South, Seattle, Washington at all times during the period that Plaintiff was trafficked.

9. Defendant G6 Hospitality, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

10. Defendant G6 Hospitality, IP, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

11. Defendant G6 Hospitality Property, LLC is a for-profit Delaware limited liability company with its principal place of business in Carrollton, Texas. At all relevant times, G6 Hospitality Property, LLC owned and operated the following Motel 6 properties in Washington: Motel 6 Seattle Airport, located at 16500 Pacific Hwy S, SeaTac, WA 98188; and Motel 6 on Military Road, located at 20651 Military Rd S, SeaTac, WA 98198.

12. Defendant G6 Hospitality Purchasing, LLC, is a for-profit Delaware corporation with its

---

[4] See WASHINGTON cases *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (internal citation and quotations omitted).



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

principal place of business in Carrollton, Texas.

13. Defendant G6 Hospitality Franchising, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

14. Defendant Motel 6 Operating, LP, is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

15. Defendants G6 Hospitality, LLC, G6 Hospitality IP, LLC, G6 Hospitality Purchasing, LLC, G6 Hospitality Franchising, LLC and Motel 6 Operating, LP will collectively be referred to as ("G6 Defendants.")

16. SeaTac Hotels, LLC and G6 Hospitality Property, LLC will collectively be referred to as "Local Defendants."

17. G6 Defendants and "Local Defendants" will collectively be referred to as "Defendants."

18. The G6 Defendants are registered to do business in the State of Washington and may be served through their registered agent, Cogency Global Inc., 1780 Barnes Blvd. SW, Tumwater, Washington 98512.

19. Upon information and belief, during the time Plaintiff was trafficked as a minor, , Defendants owned, operated, managed, and profited from the Motel 6 branded properties located at: 16500 Pacific Hwy S, SeaTac, WA 98188; 20651 Military Rd S, SeaTac, WA 98198; and 18900 47th Ave S, Seattle, WA 98188.

20. Defendants purposefully availed themselves of the privileges of conducting business in Washington and specifically in King and Pierce Counties, Washington, including through the ownership and operation of the aforementioned Motel 6 properties.

## III. <u>JURISDICTION AND VENUE</u>

21. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

this action involves a federal question under the Trafficking Victims Protection Reauthorization Act (TVPRA) and the Child Abuse Victim's Rights Act (CAVRA).

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, including Plaintiff's trafficking and Defendants' acts and failures to act at Motel 6 properties located in King County and Pierce County, Washington.

23. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) because at least one Defendant, SeaTac Hotels LLC, is a resident of this judicial district, and all named Defendants are registered to do business in Washington State.

24. In addition, 18 USC § 2255 states that a victim of trafficking who, while a minor, suffers personal injury as a result of a violation of 18 U.S.C. § 1591 may bring a civil action "in any appropriate United States District Court" to recover damages. There is no time limit for a person trafficked as a minor to bring an action under 18 USC § 2255.

## IV. <u>SEX TRAFFICKING UNDER FEDERAL LAW</u>

25. Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of causing the person to engage in a commercial sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion. *See 18 U.S.C. §§ 1591.*

26. Survivors of child sex trafficking have civil remedies available under both the Trafficking Victims Protection Reauthorization Act (TVPRA) 18 USC § 1595(a), and the Child Abuse Victim's Rights Act (CAVRA) 18 USC § 2255.

27. 18 USC Section 1595(a) creates civil liability for two categories of defendants: (1) those who have themselves committed a criminal offense under *§ 1591* of the TVPRA (i.e., perpetrator



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

liability), and (2) those who are not directly subject to criminal liability but who knowingly benefitted from participation in a venture that they knew or should have known was violating § 1591 of the TVPRA (i.e., "beneficiary liability). Defendants may also be held vicariously liable under the TVPRA for the acts and omissions of their agents and employees.

28. The requirements for liability under the TVPRA on a beneficiary theory can be stated as follows: (1) the person or entity "knowingly benefits, financially or by receiving anything of value" (2) "from participating in a venture" (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

29. Civil liability under the Child Abuse Victims Rights Act (CAVRA) arises where an individual, while under the age of 18, suffers personal injury as a result of a violation of specific federal statutes, including sex trafficking under 18 U.S.C. § 1591.

## V. FACTUAL ALLEGATIONS

### Sex Trafficking of JANE MB DOE

30. JANE MB DOE is a victim of child sex trafficking under the TVPRA, 18 U.S.C. §§ 1591. Plaintiff was fourteen years old and had recently had a baby when she was first trafficked for commercial sex in or around January 2011. The adult trafficker preyed on Plaintiff's youth and vulnerability, promising Plaintiff a "better life," and using emotional/psychological manipulation, drugs, and other forms of coercion to groom Plaintiff and then exploit her sexually for financial gain. Soon after the trafficker's arrest in a sting operation, Plaintiff was trafficked again, while still under the age of 18, to the same Motel 6 properties in the Seattle/Tacoma area. Plaintiff's trafficking and sexual exploitation continued through early adulthood, across several states in addition to the Seattle/Tacoma area, until she finally escaped in late 2016.

31. This action focuses on the two year period of 2011-2012 in which JANE MB DOE was



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

repeatedly trafficked as a minor at the three properties named in this complaint: Motel 6 SeaTac Airport South (18900 47th Ave S, SeaTac, WA 98188); Motel 6 Seattle Airport (16500 Pacific Hwy S, SeaTac, WA 98188); and Motel 6 on Military Road (20651 Military Rd S, SeaTac, WA 98198).

32. Plaintiff's stays at the named motels were not isolated incidents. JANE MB DOE returned to the three named Motel 6 locations at least once a month during 2011 and 2012, often for extended stays ranging from several days to two weeks. During these stays, Plaintiff encountered the same front desk and housekeeping staff, many of whom Plaintiff believes would have recognized both her and her trafficker, and observed the pattern of activity.

33. For these two years, and for the duration of her trafficking, Plaintiff's traffickers exercised psychological manipulation and both physical and financial control over JANE MB DOE. These individuals repeatedly transported JANE MB DOE to the above Motel 6 locations, where they rented rooms for Plaintiff to engage in commercial sex. In these rooms, JANE MB DOE was forced to endure repeated sexual assaults, as adult men entered and exited throughout the day and night. JANE MB DOE was constantly monitored by her traffickers, who obtained customers, waited outside the room, and returned immediately after each encounter to collect money and prepare the room for the next buyer. Plaintiff never left the motel room without her trafficker, and was compelled to surrender all proceeds from these encounters to her traffickers. JANE MB DOE was completely dependent on the traffickers for basic needs including food and shelter.

34. The traffickers also plied Plaintiff with addictive drugs including methamphetamines and cocaine to keep her complacent and under their continuous control. JANE MB DOE's traffickers employed threats, intimidation, and coercive tactics that prevented her from leaving or seeking help, including threats against her child and other family members. Plaintiff's traffickers



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

constantly monitored her activities and whereabouts, kept her isolated from other people, and would yell, threaten and beat her if she resisted or failed to meet nightly financial quotas.

35. In addition to her obvious youth, JANE MB DOE frequently displayed visible signs of exhaustion, fear, emotional distress, drug use, bruising and other injuries from physical violence. Her face would often appear red and puffy from crying, or bruised from being "slapped around" by her trafficker. Both inside and outside her room, hotel staff would have seen JANE MB DOE "crying, her head down, avoiding eye contact with anyone—because even a glance could lead to [her] being hit." Hotel staff and/or guests would also have overheard Plaintiff crying, yelling, and arguing with her traffickers about how tired she was, the pain she was in, and begging him to let her stop. All of these were indicators not only of commercial sex, but of sex trafficking of a child and coercion by the trafficker.

36. These indicators were open and obvious. Defendants' employees and management either knew or should have known of the ongoing exploitation occurring on their premises and should have known, or at least suspected, that Plaintiff could be underage. Despite these clear red flags, they failed to train their employees or implement basic policies and procedures designed to identify and prevent human trafficking on hotel premises. On multiple occasions, the traffickers left unusually large and frequent gratuities for housekeeping staff in apparent exchange for silence regarding the illegal activities occurring in the room.

37. Upon information and belief, Defendants' employees and managers willfully ignored Plaintiff's exploitation or accepted payments and favors from the traffickers in exchange for their silence, thereby knowingly facilitating and profiting from the trafficking enterprise.

38. Due to her young age, trauma, and the coercive environment, Plaintiff was unable to recognize or disclose her exploitation until many years after her trafficking ended, which delayed



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

discovery of her injuries and supports tolling of any applicable limitations periods.

39. As a result of her sex trafficking and Defendants' acts and omissions enabling JANE MB DOE'S exploitation at their properties, Plaintiff suffered and continues to suffer severe PTSD symptoms, including recurrent nightmares, night terrors, panic attacks, hypervigilance, and avoidance. Plaintiff struggled, and continues to struggle, to sleep, awakes screaming, sweating or shaking, and experiences intrusive memories that made her feel frozen and unsafe in public. For a long time after her ordeal ended, ordinary activities like taking a bus triggered panic attacks. Psychologically, Plaintiff remained fearful and under the control of her traffickers for more than five years after the last incident of sex trafficking in 2016.

40. Plaintiff suffered and continues to suffer severe psychological, emotional, and physical injuries related to her exploitation at Motel 6 properties, including shame, embarrassment, humiliation, stress, inability to trust, low self-esteem, isolation, insecurity and lack of confidence.

41. In 2017, Plaintiff was diagnosed with post-traumatic stress disorder, anxiety, and depression and is currently prescribed medications for anxiety and depression. Plaintiff's trauma also impaired intimacy and trust, robbing her of the ability to enjoy consensual sexual relations. Even in a supportive relationship, she could not comfortably engage in normal affection or intimacy and required significant time and patience to feel safe. Only after more than five years of consistent support, acceptance by her partner's family, and the birth of her child, has JANE MB DOE begun to rebuild her life and experience some measure of safety and autonomy.

42. Being sex trafficked also severely damaged Plaintiff's relationships with family members, including her mother and her first child. Lured away from home at 14 and trapped in a cycle of trafficking and re-trafficking, Plaintiff was deprived of the opportunity to form a strong bond with her young son during his critical early years. After escaping her trafficking situation,



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

it took years for family members to accept her into the family again, compounding her suffering, isolation and pain.

43. Because of her trafficking, plaintiff also lost the ability to obtain paid employment and the ability to attend school and complete her education and degree, leaving Plaintiff financially insecure and economically vulnerable for the foreseeable future. Further, Plaintiff's trauma has impaired her ability to maintain stable employment, pursue education, and form and sustain personal and professional relationships after being trafficked. Because of her trafficking, JANE MB DOE has suffered loss of income, diminished earning capacity, and loss of enjoyment of life.

44. Plaintiff has required, and will continue to require, psychological counseling and other mental-health treatment as a result of the trauma she endured. She has incurred and will continue to incur medical and therapeutic expenses related to these injuries.

45. The injuries described above were the reasonably foreseeable and natural consequences of Defendants' conduct. By knowingly renting rooms to sex traffickers, accepting payments derived from the trafficking venture, enabling trafficking through hotel policies and procedures, and failing to implement or enforce anti-trafficking policies, training, or reporting mechanisms, Defendants facilitated, prolonged and exacerbated Plaintiff's suffering while profiting at Plaintiff's expense.

**The Hotel Industry's Role in Sex Trafficking**

46. Human sex trafficking has been pervasive in hotels and motels for decades. Owners, operators, and controllers of these establishments have long been aware of this reality.

47. The hospitality industry has played a significant role in facilitating the sex trade.[5] Hotels

---

[5] Cavagnaro, Giovanna L. C. 2017. Sex Trafficking: The Hospitality Industry's Role and Responsibility. Cornell University School of Hotel Administration. Available at: http://scholarship.sha.cornell.edu/honorstheses/3.



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

have historically capitalized on their reputation for offering privacy and discretion, which, despite well-documented risks and widespread trafficking activity, has allowed traffickers to operate with impunity, anonymity and limited traceability. These conditions make hotels, including those operated by Defendants, prime locations for criminal activity, including sex trafficking. As a result, hotels like those named here have knowingly permitted traffickers, purchasers, and victims to occupy their premises.

48. Sex trafficking remains widespread across the United States today, with hotels serving as the primary setting where it occurs.[6] For years, traffickers have been able to generate substantial profits while facing minimal risk by operating within the relative safety and concealment that hotel environments provide.[7]

49. According to data from the National Human Trafficking Hotline, hotels are the most frequently reported location where sex trafficking occurs, surpassing even commercial front brothels. Both traffickers and those who purchase sex commonly rely on hotel rooms to facilitate and carry out their exploitation.

50. In 2014, an overwhelming 92% of calls to the National Human Trafficking Hotline involved reports of sex trafficking occurring in hotel settings. Studies have also shown that hotels are the sites for more than 90% of instances involving the commercial sexual exploitation of minors.

[6] This is not only a dominant issue, it's an epidemic issue." See Jaclyn Galucci, Human Trafficking is an Epidemic in the U.S. It's Also Big Business, Fortune (April 2019), https://fortune.com/2019/04/14/human-sex-trafficking-us- slavery/ (citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council). "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." Id

[7] See Human Trafficking in the Hotel Industry, Polaris Project (Feb. 10, 2016), https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry; see also Eleanor Goldberg, You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic, Huffington Post (June 2016), http://www.huffingtonpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-trafficking-victimslife_us_57714091e4b0f168323a1ed7.



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

51. As a result of the hospitality industry's widespread complacency, willful blindness, and gross disregard for the well-documented realities of sex trafficking, hotels have become a primary setting for its occurrence. Traffickers and buyers take advantage of the industry's systemic failure to: (1) adopt and enforce companywide anti-trafficking policies and procedures from the corporate to the property level, (2) adequately train staff to recognize and respond to signs of trafficking; and/or (3) establish effective, secure reporting mechanisms for frontline employees.

52. Each day, countless hotel employees encounter clear indicators of sex trafficking and commercial exploitation. As a result, the hospitality industry is uniquely positioned to detect, prevent, and disrupt sexual exploitation precisely where it most frequently takes place. Hotels and motels bear one of the greatest responsibilities to safeguard their guests from foreseeable harms, including sex trafficking and sexual exploitation, and must be held accountable when they fall short. As recognized in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry… and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."

53. Even figures provided by attorneys representing the hospitality industry suggest that approximately eight out of ten arrests for human trafficking take place in or near hotel properties.[8] The 2016 Trafficking in Persons Report issued by the U.S. Department of State similarly acknowledged that human trafficking is prevalent within the hospitality industry across the United States.

54. The hospitality industry's complicity plays a critical role in enabling human trafficking operations, allowing traffickers to operate transiently, maximize profits, and avoid detection.

[8] U.S. Dep't of State. 2016. 2016 Trafficking in Persons Report, at 387. Available at: https://www.state.gov/documents/organization/258876.pdf.



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

Trafficking operations are often intentionally mobile to reduce law enforcement visibility. This mobility also serves to isolate victims, limiting their opportunities to escape or seek help. Traffickers deliberately choose hotels, like those identified in this Complaint, because of the privacy, discretion, and anonymity they provide, knowing they are unlikely to be denied services, questioned, reported or interrupted.

55. Due to the established connection between sex trafficking and the hotel industry, numerous government entities and nonprofit organizations have dedicated substantial efforts to educating hotels, including the Defendants, on how to recognize and appropriately respond to signs of trafficking. Numerous organizations and agencies dedicated to combating sex trafficking, such as the U.S. Department of Homeland Security ("DHS"), the National Center for Missing and Exploited Children, the Polaris Project, the Washington State Attorney General's Office, Love146, and ECPAT, among others, have developed and disseminated recommended policies and procedures for identifying indicators of sex trafficking.[9]

56. Codes of Conduct, best practices and guidelines were specifically developed for the hotel industry to reduce or prevent sex trafficking—many of them before Plaintiff was ever trafficked. [10] Defendants knew or reasonably should have known about these best practices and guidelines during the time period at issue. Available materials and protocols focus on helping hotel staff recognize common indicators of trafficking and respond safely and appropriately. The red flags highlighted include, but are not limited to:

a. Guests displaying fear, anxiety, hyper-vigilance, submission, or unusual nervousness;

---

[9] By 2010, available tools and materials for hotels to combat human trafficking included resources from government agencies, awareness programs from industry associations, and basic identification and reporting protocols. See, i.e. United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, launched in 2010. Available at https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf. See also ECPAT-USA, the Tourism Child-Protection Code of Conduct (2004).



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

b. Visible signs of physical abuse, confinement, or restraint;

c. Evidence of verbal intimidation, emotional manipulation, or demeaning treatment;

d. Indications of malnutrition, lack of hygiene, fatigue, untreated injuries, or erratic behavior;

e. Restricted movement or continuous monitoring by others;

f. Avoidance of eye contact or social interaction;

g. Absence of personal identification or control over money;

h. Clothing that is inappropriate for the guest's age or notably inferior in quality compared to others in the group;

i. A lack of personal belongings such as bags or luggage;

j. Presence of an older male companion posing as a boyfriend or guardian;

k. Groups of young individuals accompanied by an older adult;

l. Matching tattoos among group members, potentially indicating trafficking-related branding;

m. Drug use or signs of common "party drug" abuse such as Ecstasy, GHB, Ketamine, methamphetamines, cocaine, and marijuana;

n. The presence of excessive sexual paraphernalia including condoms and lubricants;

o. Use or possession of multiple cell phones;

p. Possession of significant amounts of cash or pre-paid debit cards.

q. Inability to come and go freely from the hotel;

r. People watching others from vehicles or by loitering around the premises;

s. Solicitation in and around the hotel;

t. Women dressed provocatively and accompanied by men;



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

u. Money exchanged in common areas, including hallways, lobbies, and parking lots;

v. Men or women with weapons;

w. Multiple non-guest men coming in and out of a particular hotel room;

x. Signs of injury on men or women whom seem to be controlled or watched by others;

y. Sexual supplies including lubricants and devices in rooms visible to cleaning staff;

z. Towels with blood;

aa. Excess towels and sheet requested per night;

bb. Excessive condoms in trash taken by cleaning staff;

cc. Signs of verbal and physical abuse, including yelling, screaming, and signs of physical injury;

dd. Women appearing to be under the influence of drugs or alcohol while being transported in and out of the hotel or taken from room to room;

ee. Asking for rooms away from other guests;

ff. Asking for rooms with separate entrances/exits that can be propped open for non-guests;

gg. Paying cash on a nightly basis or in increments for extended periods of time;

hh. Paying with stolen credit cards; and

ii. Paying with credit cards online that are not in hand or do not have a matching ID.

57. At all times relevant to the trafficking alleged in this Complaint, Defendants knew or reasonably should have been known of the well-established connection between commercial sex activity and human trafficking within the hotel setting. Defendants knew or should have known that indications of prostitution at their properties were -- in reality-- red flags for sex trafficking. The observable signs of Plaintiff's trafficking at the subject hotels were apparent, and Defendants



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

either failed to notice them or chose to ignore them.

58. Defendants were, or in the exercise of reasonable care should have been, aware of these indicators of sex trafficking while operating, controlling, and managing their hotel properties—including the locations at issue in this case. This knowledge should have informed their development and enforcement of policies and procedures specific to those properties, as well as their responsibilities to properly train, educate, and supervise hotel staff to identify and respond to signs of trafficking.

59. Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel employees can identify and respond to this trafficking, Defendants' choice to continue generating revenue from traffickers without taking reasonable steps to identify and prevent trafficking in its hotels, is a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking.

**Defendants Knew About and Participated in the Sex Trafficking of JANE MB DOE and Others at the Subject Motel 6 Locations**

60. Defendants had both actual and constructive knowledge of the sex trafficking of Plaintiff and other victims at the subject Motel 6 locations. The trafficking was not an isolated or hidden occurrence, it was the direct and foreseeable result of Defendants' ongoing facilitation of sex trafficking activity at their properties, which generated revenue through repeated room rentals to known traffickers and buyers, including Plaintiff's traffickers.

61. During the period when Plaintiff was trafficked, the following Motel 6 locations were owned and operated by G6 Hospitality Property, LLC: Motel 6 Seattle Airport (16500 Pacific Hwy S, Seattle, WA), and Motel 6 on Military Rd (20651 Military Rd S, SeaTac, WA). G6 Hospitality Property, LLC and G6 Defendants knew that women and children, including JANE



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

MB DOE, were being trafficked for sex at these Motel 6 locations and directly observed, overheard, and witnessed the same by and through their agents, managers, and employees from 2011 through 2012, as well as before and after. G6 Defendants, directly and by and through their agents, managers and employees. knew and should have known that Plaintiff was being trafficked at the subject Motel 6 properties.

62. SeaTac Hotels, L.L.C. owned, operated and controlled the Motel 6 where Plaintiff was trafficked located at 18900 47th Ave S., Seattle, Washington. SeaTac and G6 Defendants knew and should have known that JANE MB DOE and other women and children were being trafficked for sex at this Motel 6, as well as before and after.

63. Defendants, and each of them, are responsible for the acts, omissions, and knowledge of all employees of the subject hotel locations when operating the hotel because the Local Defendants were agents of Defendants and these acts and omissions were committed in the course and scope of employment. Defendants ratified these acts and omissions because each failed to exercise reasonable care in the hiring, training, supervision, and retention of these employees given the specific risks known and reported to Defendants of sex trafficking occurring at the subject Motel 6 locations.

64. Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the subject locations, including the trafficking of Plaintiff, Defendants continued renting rooms for profit to these traffickers, including the rooms used to sexually exploit Plaintiff.

65. Defendants knew or should’ve known that Plaintiff was being trafficked and, despite this, benefited from continued association with Plaintiff’s traffickers by repeatedly providing them with a venue in the form of motel rooms and related services, to harbor Plaintiff and facilitate Plaintiff’s sexual exploitation and trafficking.



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

66. Defendants facilitated widespread trafficking at the motel locations, including the trafficking of Plaintiff in ways including:

a. Allowing inappropriate and inadequate practices for hiring, training, supervising, managing, retaining, and disciplining front line staff regarding issues related to human and sex trafficking;

b. Inadequate and inadequately enforced sex trafficking notice and training for motel staff;

c. Choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, laws, and/or applicable franchisor policies and procedures and its own claimed policies and procedures so as to support an environment without accountability; and

d. Implicitly encouraging the activities of sex traffickers by creating an environment where traffickers did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the motel staff and openly traffic women and children with the motel staff's cooperation and assistance.

67. Upon information and belief, during the times Plaintiff was trafficked at the subject properties, G6 Defendants participated directly in and controlled aspects of the daily operations of those subject hotels that influenced whether and to what extent trafficking occurred at the hotels, including but not limited to the trafficking of Plaintiff as follows:

a. G6 Defendants assumed responsibility and control over the human trafficking response of their subject motel properties, including but not limited to design, implementation, and mandates of practices related to trafficking, safety and security



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

procedures, employee and franchisee education, training and response, partnership with external organizations, security, reporting, and advocacy;

b. G6 Defendants retained control over when its branded motels would share information with law enforcement and when law enforcement would be contacted about suspected criminal activity in their branded motel locations;

c. G6 Defendants retained control over determining which motels needed additional training or other resources based on the risk of trafficking occurring and other related criminal activity;

d. G6 Defendants retained control to terminate hotel staff and/or a franchising agreement based on the response to human and sex trafficking;

e. G6 Defendants determined whether the training was provided, when it was provided, the content of the training, how the training was delivered, who received it, and the consequences of someone not participating or failing to follow such training;

f. G6 Defendants retained control over setting, supervision, overseeing, and enforcement policies and procedures for housekeeping services at the subject motel locations, including how often rooms must be entered, how to respond to guest refusals of entry into rooms, and steps to monitor guest safety issues through housekeeping services; and

g. During the time Plaintiff was trafficked at: Motel 6 Seattle Airport (16500 Pacific Hwy S, Seattle, WA) and Motel 6 on Military Rd (20651 Military Rd S, SeaTac, WA), Defendants Motel 6 Operating L.P. and G6 Hospitality Property, LLC directly owned and operated the motels, and the remaining G6 Defendants also controlled the day to day operations.



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

h. During the time Plaintiff was trafficked at the Motel 6 on18900 47th Avenue South, Seattle, Washington, Defendant SeaTac Hotels, LLC owned and operated the Motel 6 hotel and G6 Defendants also controlled the day to day operations.

68. As a direct and proximate result of these egregious practices on the part of the Defendants, Plaintiff and numerous other victims of sex trafficking and exploitation have been permanently injured and damaged physically, emotionally, psychologically, and financially.

69. Defendants' knowledge is not limited to a general awareness of the problem of sex trafficking in the hotel industry at large. Defendants have known, since well before Plaintiff was trafficked, that sex trafficking was ongoing and widespread at their branded properties, including the subject properties named herein.

70. Use of the Defendants Motel 6 branded properties for sex trafficking is well known to Defendants. Upon information and belief, before and at the time Plaintiff was trafficked at the subject Motel 6 properties, Defendants monitored criminal activity occurring at the branded hotels and were aware of activity indicating commercial sex, sex trafficking, and related crimes occurring at those branded hotels, including the subject Motel 6 locations where Plaintiff was trafficked.

71. Defendants , including G6 Defendants, knew or should have known that staff at its branded properties, including the subject Motel 6 locations, were facilitating sex trafficking and that it was generating revenue through policies that encouraged sex traffickers to operate at their brand properties, including but not limited to not implementing policies and procedures known to be necessary to stop known trafficking; not requiring identification cards or "IDs" from guests or visitors; allowing daily payments of cash for extended stays; complying with requests for rooms to be rented away from other guests; allowing traffickers to escort drugged, bruised and



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

battered women to and from rooms without IDs; allowing several buyers to come in and out of the rooms victims were trafficked in without ID; ignoring yelling and screaming from rooms where trafficking took place; ignoring obvious copious amounts of sex paraphernalia; not addressing the trafficking signs and reports of drugs, abuse and prostitution; forming relationships with traffickers and treating traffickers like "regulars" with benefits by accommodating specific requests that entail known signs of trafficking and not reporting the trafficking or taking any steps to prevent or stop it.

72. During the period Plaintiff was trafficked at the subject locations named herein, there were obvious signs that her traffickers were engaged in sex trafficking and those signs would have been apparent to Defendants through various mechanisms, including but not limited to, guest reviews, news stories, on-site inspections, security footage, written reports, data collection, law suits, law enforcement data, and reports by employees or guests to managers, supervisors, owners, franchisors and/or parent companies and affiliates.

73. Defendants have access to reviews left by guests on websites wherein guests frequently complain about the prevalence of criminal activity, drug use, prostitution, physical violence, and other signs of likely sex trafficking.

74. Information that has become public through news stories establishes the entrenched and pervasive nature of Defendants' role in providing a venue where sex trafficking has continued unabated for several years. Defendants have provided the means necessary for traffickers to traffic victims, including Plaintiff.

75. Other women and minors were being trafficked for sex at the same hotels at the same time as JANE MB DOE and many had been trafficked at the subject Motel 6 locations before Plaintiff. Other women have come forward and sued Defendants for being trafficked at some or



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

all of the subject Motel 6 properties before and after Plaintiff.

76. Local Defendants and others present at the hotel properties would have witnessed multiple, well-known indicators of trafficking each time JANE MB DOE and other trafficking victims stayed at their motels. Each of these would or should have raised reg flags for hotel staff, especially where a minor was involved. For example, Plaintiff's traffickers were present always at the time of check-in and would remain on or near the premises, including outside the room door or in the motel parking lots, while Plaintiff was forced to perform sex acts for buyers. At each of the subject Motel 6 locations, Plaintiff appeared visibly fearful, emotionally withdrawn, and physically exploited, looking tired, upset, scared, nervous, and despondent. Staff most certainly would have noticed the high foot traffic of unrelated adult males to a teenager's room at all hours of the day and night; a teenager wearing heels and inappropriately skimpy and provocative clothing when she opened the door; repeated cash payments for single-night stays; excessive amounts of used condoms found in the trash; excessive requests for clean linens and towels; strong odors and signs of substance use; and rooms strategically chosen away from the front desk with proximity to exits. A reasonable hotel would have seen these regular "red flag" interactions at their property in plain sight and Defendants should have seen and did see it by and through their employees and agents.

77. Cleaning staff would have also observed well known "red flags" for trafficking in or around guest rooms, including JANE MB DOE's room, such as condoms, sex toys, drug paraphernalia, and frequent requests for new bedding and towels. They also would have observed the unusual foot traffic, the traffickers lingering around outside and inside Plaintiff's room, money exchanges, bruises and scratches on Plaintiff's face and neck, and controlling or abusive behavior by the traffickers. Cleaning staff would know about the unusually large size of the "tips"



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

left for them by Plaintiff's trafficker. Indeed, given the frequency and duration of JANE MB DOE's stays at the three subject motels, it is highly unlikely if not impossible that employees entering and cleaning the rooms while Plaintiff was present, or even just collecting the trash, soiled towels and linens at the door, were not aware of what was happening inside.

78. Upon information and belief, at all times relevant, multiple employees at the subject Motel 6 locations, including management-level and parent company employees, observed, overheard, or were made aware of these obvious signs of trafficking while acting within the scope and course of their employment.

79. As such, Defendants knew or should have known that JANE MB DOE was being trafficked at the subject Motel 6 locations. A jury will likely find that they knew and at the very least, should have known.

80. A brief examination of just a handful of examples shows the extraordinary frequency with which Defendants have long received and continue to receive evidence and reports of human trafficking taking place at their Motel 6 locations.

81. A Los Angeles Motel 6 became such a hub for human trafficking and other criminal activity that G6 Defendants paid to settle a public nuisance lawsuit related to such trafficking filed by the City of Los Angeles.[11] The Los Angeles nuisance settlement required G6 Defendants to change policies that were facilitating sex trafficking.[12] G6 Defendants knew from this lawsuit, from many prior lawsuits, and from their personal knowledge that sex trafficking was happening at their properties that their own hotel policies were facilitating sex trafficking. Yet, on information and belief, G6 Defendants failed and have still failed to adequately implement and

---

[11] Motel 6 pays $250,000 to settle human trafficking suit (Aug. 31, 2017), https://www.cbsnews.com/news/motel-6-pays-250000-to-settle-human-trafficking-suit/.
[12] *Id.*



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

enforce necessary changes.

82. Public statements by G6 Defendants confirm that they knew before and during the sex trafficking of JANE MB DOE that sex trafficking was a problem in the hotel industry, that sex trafficking was occurring at their branded hotels, and that they retained control over the response of their branded hotels to this problem. G6 Defendants recognized that "[t]raffickers often use hotels and motels for sex trafficking activities due to the privacy extended to guests."[13] They also acknowledged the significant role G6 Defendants have in the three D's: deterring, detecting, and disrupting sex trafficking in their branded hotels. [14]

83. G6 Defendants acknowledge on their website that they control the policies, procedures, training, and codes of conduct that have facilitated sex trafficking at its Motel 6 Brand motels, including the subject Motel 6 properties where JNE MB DOE was trafficked and abused regularly for two years. [15]

84. Among some of the notable press involving frequent use of Motel 6 and other G6 hotels for illegal trafficking activity, the following was noted:

a. In late 2003, a trafficker set up a sex trafficking venture at a Motel 6 in Connecticut in which two (2) young women were sold for sex eight (8) to ten (10) times per day.[16]

b. In April 2009, a sex trafficking venture operated out of a Motel 6 in Toledo, Ohio.[17]

c. In approximately September 2011, sex traffickers set up an operation at a Motel 6 in Toledo, Ohio to sell fifteen (15) and sixteen (16) year old girls for sex.[18]

---

[13] G6 HOSPITALITY ANTI-HUMAN TRAFFICKING TRAINING, http://g6propertycollateral.com/wp-content/uploads/2020/02/G6_TheRoomNextDoor_Training_V12b_NoFacilitator.pdf

[14] *Id.*

[15] https://g6hospitality.com/combating-human-trafficking/

[16] Amy Fine Collins, Sex Trafficking of Americans: The Girls Next Door, Vanity Fair (May 2011), https://www.vanityfair.com/news/2011/05/human-trafficking-201105

[17] Five Toledoans Indicted On Sex Trafficking Charges, ABC7Chicago.com (Nov. 7, 2010), https://abc7chicago.com/archive/7771888/.

[18] Mark Reiter, Two Toledoans Accused Of Juvenile Sex Trafficking, The Blade (Jun. 1, 2010),



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

d. From approximately 2012 through October 2014, two (2) men engaged in a criminal sex trafficking venture of children which operated in part out of a Motel 6 in Harvey, Illinois.[19]

e. Police rescued an eighteen (18) year old girl from a sex trafficker in February 2012, at a Motel 6 in Portland, Oregon.[20]

f. The FBI investigated and arrested several individuals in December 2012, for the victimization and human trafficking of several young women and a juvenile at a Motel 6 in Madison, Alabama.[21]

g. The Orange County Human Trafficking Task Force busted a criminal enterprise in December 2012 that was selling women for sex out of a Motel 6 in Anaheim, California.[22]

h. Two men were arrested in March 2015 for sex trafficking a fifteen (15) year old girl at Motel 6 in Austin, Texas.[23]

i. In March 2015, police arrested a man for sex trafficking a runaway seventeen (17) year old at a Motel 6 in Warwick, Rhode Island.[24]

j. Over a fourteen (14) month period ending in approximately April 2015, at the same Motel 6 in Warwick, Rhode Island had Seventy-five (75) arrests on its property for

---

https://www.toledoblade.com/Courts/2012/06/02/2-Toledoans-accused-of-juvenile-sex-trafficking-1.html

[19] Press Release, U.S. Dept. of Justice, Two Aspiring Rappers Charged With Operating Sex-Trafficking Ring In Chicago And Suburbs (Jan. 15, 2016), https://www.justice.gov/usaondil/file/813771/download.

[20] Press Release, U.S. Dept. of Justice, Tacoma Pimp Sentenced To 25 Years For Sex-Trafficking Two Victims (Nov. 20, 2013), https://www.justice.gov/usao-or/pr/tacoma-pimp-sentenced-25-years-sex-trafficking-two-victims.

[21] FBI Investigates Human Trafficking At Madison Hotel, WHNT News 19 (Dec. 7, 2012), https://whnt.com/2012/12/07/fbi-investigates-human-trafficking-at-madison-motel/.

[22] Suspects Busted in Anaheim Sex Ring, ABC13 Eyewitness News (Dec. 5, 2012), https://abc13.com/archive/8909784.

[23] Lindsay Bramson, Local Teen Saved from Sex Slavery; Two Charged, KXAN Austin (Mar. 6, 2015), https://www.kxan.com/news/local/austin/local-teen-freed-from-sex-slavery-two-charged/1049580764.

[24] Amanda Milkovits, Massachusetts Man Accused of Trafficking Teen In Warwick Motel, NewportRI.com (Mar. 24, 2015), https://www.newportri.com/article/20150324/NEWS/150329666.



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

crimes including sex-trafficking.[25]

k. Seven (7) people were indicted in January 2016, by a Colorado grand jury for sex trafficking children from 2014 through the summer of 2015, out of hotels in Denver, Colorado, including a Denver area Motel 6.[26]

l. In the summer of 2015, a woman was arrested at a Motel 6 in Great Falls, Montana where she was involved in sex trafficking a seventeen (17) year old girl.[27]

m. A married couple was indicted in June 2015, for their roles in sex trafficking minor children ages seventeen (17), sixteen (16), and fifteen (15) years old out of a Motel 6 in Everett, Washington.[28]

n. In Tuscaloosa, Alabama police rescued a fourteen (14) year old girl from a Motel 6 in June 2015, and a grand jury subsequently charged her assailant with human trafficking and rape.[29]

o. In approximately July 2015, sex traffickers sold a fifteen (15) year old girl for sex at a Motel 6 in Pismo Beach, California.[30]

p. In approximately March 2013, sex traffickers began operating a sex trafficking venture out of Motel 6 locations in Bangor and Portland, Maine.[31]

---

[25] Sarah Kaplan, Crime-Ridden Motel 6 In R.I. Will Hand Over Guest List To Police, The Washington Post (Apr. 28, 2015)https://www.washingtonpost.com/news/morning-mix/wp/2015/04/28/crime-ridden-motel-6-in-r-i-will-hand-over-guest-list-to-police/?utm_term=.a804ce3f32a8.

[26] Hsing Tseng, Seven Indicted by Colorado Grand Jury In Child Sex Trafficking Ring Bust, Fox 31 Denver (Jan. 6, 2016), https://kdvr.com/2016/01/06/7-indicted-by-colorado-grand-jury-in-child-sex- trafficking-ring-bust/.

[27] Andrea Fisher, Woman Caught Up In Human Trafficking Ring Pleads Guilty (Aug. 29, 2016), https://www.greatfallstribune.com/story/news/local/2016/08/29/woman-caught-human-trafficking-ring-pleads-guilty/89566374/.

[28] Diana Hefley, County Investigating 45 Ongoing Human Sex Trafficking Cases, Herald Net (Jun. 26, 2015), https://www.heraldnet.com/news/county-investigating-45-ongoing-human-sex-trafficking-cases/.

[29] Tuscaloosa Man Charged With Rape And Trafficking Mississippi Teen, News Mississippi (Nov. 7, 28 2014), https://newsms.fm/tuscaloosa-man-charged-human-trafficking-mississippi-teen/.

[30] Matt Fountain, Four Accused Of Pimping Out 15-Year-Old Girl In SLO Will Stand Trial, SanLuisObispo.com (May 5, 2016), https://www.sanluisobispo.com/news/local/article75832962.html.

[31] Danielle McLean, What Drives Maine Sex Traffickers' Inhumanity, Bangor Daily News Maine Focus (Sept. 12, 2016), https://bangordailynews.com/2016/09/12/mainefocus/what-drives-maine-sex- traffickers-inhumanity/.



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

q. Beginning in approximately May 2013, a fifteen (15) year old runaway was trafficked for sex out of the Motel 6 on Caton Avenue in Baltimore, Maryland.[32]

r. In Richmond County, Georgia a man was arrested at a local Motel 6 in October 2013 and charged with sex trafficking of two young women.[33]

s. In 2019, two different men were arrested within a week of one another and charged with sex trafficking a woman and a child out of the subject Motel 6 located at 18900 47th Ave S., Seattle, Washington—one of victims, like Plaintiff, was just fourteen (14) years old.[34]

t. In 2019, Motel 6 parent companies, including G6 Defendants, were implicated in a lawsuit in Washington in which they were sued by the state for violating the privacy of their guests by turning over guest information to ICE law enforcement without warrants. G6 Defendants' representative claimed publicly that they turned over the information because they believed it would lead to the arrest of criminals, including sex traffickers, thus admitting they believed sex traffickers were operating at their properties.

u. In 2019, a minor sex trafficking victim sued the subject Motel 6 locations and several G6 Defendants for being sex trafficked at the *same three subject Motel 6s as JANE MB DOE.* The minor plaintiff alleged that the subject three Motel 6s at issue herein, allowed her to be brutally trafficked for sex from age twelve (12) years old to fourteen (14) years old with up to twenty (20) adult men coming and going per day to rape her.

[32] Anne Kramer, Man Faces Prison Time For Sex Trafficking Baltimore Teen, WBAL News Radio (Apr. 10, 2014), https://www.wbal.com/article/106578/2/man-faces-prison-time-for-sex-trafficking-baltimore-teen.

[33] UPDATE: Man Arrested For Sex Trafficking, WRDW.com On Your Side, (Oct. 3, 2013), https://www.wrdw.com/home/headlines/Man-arrested-for-sex-trafficking-226301261.html.

[34] Prosecutor: SeaTac Motle 6 Used for Sex Trafficking, KIRO 7 News Seattle, (May 17, 2019), https://www.kiro7.com/news/local/prosecutor-seatac-motel-6-used-for-sex-trafficking/94906749/.



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

In response to that lawsuit, a "Motel 6 spokesperson" stated that "Trafficking of people violates basic human rights and constitutes a global societal problem in which multiple stakeholders must partner in order to eradicate this problem. Motel 6 takes a proactive, zero-tolerance stance on human trafficking." Yet, Defendants continued to participate in ventures being used for sex trafficking and to allow it to occur at their properties thereafter.

v. Four other civil lawsuits have been filed against Motel 6 Defendants and/or G6 Defendants in the past two years related to sex trafficking occurring in the Seattle area, and three of those implicate some or all of the same Motel 6 locations where Plaintiff was trafficked.

85. This sampling of news stories, reviews, and other public information establishes that, at the time JANE MB DOE was trafficked at the subject properties, and for many years thereafter, Defendants knew or should have known that:

a. There was widespread and ongoing sex trafficking occurring at Motel 6 branded properties, including at the subject Motel 6 locations where Plaintiff was trafficked;

b. Motel 6 property owners and/or franchisees including Local Defendants and their agents and employees, were not taking reasonable steps to identify, report, and respond to known or probable sex trafficking occurring at their hotel properties and were instead, facilitating sex trafficking and harboring traffickers and victims at the branded hotel properties; and

c. Defendants were earning revenue by providing venues where widespread and ongoing sex trafficking was occurring.



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

86. Internet reviews for the subject Motel 6 locations named herein, which Defendants read, managed, controlled, and monitored, also show the pervasiveness of crime including sex trafficking at these properties before, during and after Plaintiff was trafficked. Here are just a few examples:

a. Motel 6 located at 20651 Military Rd S., Seattle, WA 98188

- 2017 Trip Advisor review "Very sketchy people outside hanging out in the parking lot late at night. Drug dealing?? First time here in Seattle and not a good choice for a hotel. Girl at the desk not too friendly."[35]
- 2018 Yelp review "Every kind of criminal you ever heard of lodges here. Heroin and meth are sold from certain rooms or in the parking lot. There are always hookers around…"[36]
- In 2021, a Google reviewer stated, "the staff and guests all look like functioning drug addicts."
- In 2020, a Google reviewer stated, "the towel in the shower had dried blood on it" and there were "vagrants all over the parking lot, talking about addiction and "beating people."
- In 2018, a Google reviewer stated, "there were extremely sketchy looking people hanging around the motel," and after switching rooms, "more drugged out looking people hanging around."
- In 2019, a Google reviewer said, "there were sketchy people out there," "random people hanging around," and "Didn't feel safe."

[35] MOTEL 6 SEATTLE SOUTH - Prices & Reviews (SeaTac, WA) (tripadvisor.com)
[36] ttps://www.yelp.com/biz/motel-6-seattle-south-seatac?start=10&rr=1



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

- In 2019, a Google reviewer said it was "a melting pot of drug addicts, thief's and criminals" and "random people knocking at my door."
- In 2018, a Google reviewer stated, "creepy people hanging outside of rooms and . . . trying to get girls in there rooms."
- In 2019, a Google reviewer said people were screaming and yelling all night long.
- In 2019, another Google reviewer said, "someone tried getting in our room at 4 am then a woman was pounding on our door at 5," and "people screaming all night."
- In 2018, a Google reviewer said "after dark, it got very sketchy... and I grew up in a sketchy neighborhood..this was so much worse!! There were people fighting in the room next to us, above us and outside our door…..all night long! I barely slept and was scared for our safety." They also said, "Multiple calls to the front but no one ever answered."
- A 2020 review said, "other hotel guests fighting during the night."
- Another 2020 review said at check in there were police there due to a fight and they saw police two more times during a short stay.
- In 2019, a Google reviewer said, "there are a lot of shady things that go on at that property." "There were a lot of people staying there that had cars coming in and they came out and did something and leave."
- In 2017, a Google reviewer complained that they put her and her kids in a room surrounded by a biker gang that was yelling in and out of rooms all night.
- In 2018, a Google reviewer said, "very shady people" and "drug infested hotel."
- In 2018, a Google reviewer called it "a drug and prostitute infested motel."



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

- In 2018, another Google reviewer said, "drug dealings and prostitution were daily."
- In 2018, another Google reviewer warned about "people fighting outside my door."
- In 2018, a Google reviewer told a story about a "hotel guest goes bezerk in a room two doors down . . . threatens death to his girlfriend or wife . . . breaks main window of room with something." "Nobody cleaned up."
- In 2020, a Google reviewer talked about how the employees were friendly with loud guests, swore at the reviewers when they complained about safety issues and people banging on their door, and they overhead the employees telling another guest down the hall that they "had a snitch" referring to the reviewer that complained.
- In 2019, a Google reviewer stated, "drug activity happening with numerous people . . . smoking drugs and possible illegal activities going on with about 8 people in each room and about 20 people congregated in the parking lot" and "security just walked right past all that like nothing."
- In 2019, another Google reviewer recounted "people were up all night slamming doors going in and out all through the all early hours."
- In 2020, a Google reviewer stated, "multiple gang members calling to my room I can't sleep because people are fighting."
- In 2018, a nearby worker gave a Google review stating "I work in the area, there are so many better and safer options. Lots of less than desirable types frequent this location."



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

- In 2018, a Google reviewer stated "Lots of shady people around especially at night bad area to stay in."
- In 2020, a Google reviewer stated, "THERE IS NO SECURITY."
- In 2019, a Google reviewer stated, "Drug addicts everywhere."

b. <u>Motel 6 located at 16500 Pacific Highway, Seattle, WA 98188</u>

- In 2007 Trip Advisor Review stated, "Our room was a health hazard. There were blood stains in the bathroom and we found a drug syringe in the roll of the toilet paper"
- 2013 Yelp review "…AVOID THIS PLACE unless you are a crackhead, meth freak, prostitute or are looking to be violated in some way. I honestly can't believe this passes for a motel, as the majority of the people wandering the halls during my stay were DEFINITELY there for reasons other than just needing a place to stay."[37]
- 2018 Trip Advisor review states: "I'm a recent retired LTC from the US ARMY (AOC J.A.G.) and cancer patient, who stayed at this Motel 6 for a total of 10 weeks ... Racism, preferential treatment, fraud, drug/prostitution activity, and lack of integrity all seem to be issues caused by/exacerbated by these employees. . . I'd look elsewhere if the choice is yours, if not ... sleep with one eye open!
- 2015 Yelp review 8 states: "I'm pretty sure that this motel is a staging area for prostitution. Seems like some gals were staying here with their pimps. The area is notorious for prostitution. That said, the rooms looked new and we're clean. The

[37] https://www.yelp.com/biz/motel-6-seattle-seattle



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

staff was friendly. It's good for a night if you have an early flight out of Seatac."[38]

- 2015 Yelp review states: "There's a whole bunch of people in and out of this motel, walking around, driving around mind you these people aren't even staying at the hotel, they'll look at you weird and make you feel super uncomfortable."[39]
- 2013 Yelp review states: "here were prostitutes swarming around, one of which knocked on our door while we were packing. My husband said, "who is it?" and the cracking voice on the other side of the door said, 'Summer."[40]
- In 2019, a Google reviewer stated, "they are using this motel to prostitute and sell drugs"
- In 2016, a Yelp reviewer stated, "This place is littered with shady drug deals and prostitutes"
- In 2016, another Yelp reviewer said they saw a police officer patrolling the parking lot and they asked him if it was a safe place to stay, the reviewer claims the police said, "get out of here as soon as possible" and that it was not safe for them to be there. The police waited with them while they found another place to stay.
- In 2020, a Yelp reviewer stated, "I wouldn't do it again unless I needed some drugs or a hooker . . . lots of foot traffic all night and a young lady asked to join me in my room for $100."
- Motel 6 located at 18900 47th Avenue, SeaTac, WA 98188
- 2017 Trip Advisor review states "Our room was very noisy most of the night and

[38] https://www.yelp.com/biz/motel-6-seattle-airport-seattle?start=30
[39] https://www.yelp.com/biz/motel-6-seattle-airport-seattle?start=70
[40] https://www.yelp.com/biz/motel-6-seattle-airport-seattle?start=40



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

the beds were very uncomfortable. Drug dealers and prostitutes were staying at the hotel. By this time it was dark and I did not feel safe going outside so I locked the door and stayed for the night and hoped for the best. It felt very unsafe. DO NOT STAY AT THIS HOTEL. Next morning I was just grateful to be alive and that my car had not been broken into or stolen."[41]

- 2016 Trip Advisor review states "The motel is overpriced for what you get, and while I was there a few days I saw shady characters all around, a guy sleeping in his car in the parking lot, a prostitute enter the motel for her "work," druggies, and some yelling in the hallways."[42]
- 2016 Trip Advisor review states "Checked into the room with strange people lurking around. I thought with best hopes that maybe they were secretly filming a zombie movie. But then I realized it was just people most likely high on heroin bumping into the walls cuz they couldn't find their rooms. The prostitutes outside my window yelling at me their prices..."[43]
- 2015 Yelp review states "…and like other reviews mentioned... we did see some prostitutes in the parking lot... DEFINITELY STAY AWAY!"[44]
- 2015 Yelp review states "We had the joy of having to listen to a prostitute bang everyone, after she was finished with her sexual marathon one of the men was drunk and returned to her room demanding money, a woman in a neighboring

[41] https://www.tripadvisor.com/Hotel_Review-g58732-d243759-Reviews-or50-Motel_6_Seattle_WA_Sea_Tac_Airport_South-SeaTac_Washington.html
[42] https://www.tripadvisor.com/Hotel_Review-g58732-d243759-Reviews-or50-Motel_6_Seattle_WA_Sea_Tac_Airport_South-SeaTac_Washington.html
[43] https://www.tripadvisor.com/Hotel_Review-g58732-d243759-Reviews-or60-Motel_6_Seattle_WA_Sea_Tac_Airport_South-SeaTac_Washington.html
[44] https://www.yelp.com/biz/motel-6-seattle-seattle?start=70



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

room stepped out and told them to shut up or she'd call the police, a brawl broke out and they were all arrested."[45]

- In 2016, a Google review mentioned staff said "she's gonna fight someone in the parking lot afterwards;" "outside doors didn't' lock;" and "Not safe."
- 2019 Yelp review states "I checked in at 12 so most of the drugs and prostitution was minimal. No one bothered me. Went into my room, locked the door, brushed my teeth and went to bed out cold."[46]
- 2022 Yelp review states "The whole experience was a NIGHTMARE! From what I witnessed... think this location is one that is frequented by prostitutes & the homeless."[47]
- Google reviews from 2022 to 2025 complained that the doors to the outside around the motel were all broken so that anyone could come in at any time.
- A Google Review form about 2019 states: "knife marks and blood spatter on the walls, from what appears to have been a knife fight/murder crime scene;" "I'm pretty sure the guys lingering outside when I was checking in (around 11 pm) were part of a trafficking ring, they followed casually behind me to my car until they realized my husband was in the car;" "the door entering to the hallway of the motel was broken;" and "security needs to be fixed here."
- In 2018, a Google review noted that a man was found dead or murdered in one of the rooms and she witnessed a housekeeper find him dead on the bed. Hours later, they had rented it to a new person without any special cleaning crew."

[45] https://www.yelp.com/biz/motel-6-seattle-seattle?start=30
[46] https://www.yelp.com/biz/motel-6-seattle-seattle?start=10
[47] https://www.yelp.com/biz/motel-6-seattle-seattle?start=10



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

- In 2018, a Google review stated that "safety and drugs in this hotel is an issue."
- In 2019, a Google review stated "non-working phone," "gangster graffiti on the furniture," and "neighborhood did not feel safe."
- In 2017, a Google review stated, "people just hang around the hotel and you can tell some people live out of it;" and "we arrived about 45 minutes shy of a shooting where someone was murdered and an innocent bystander was left wounded."
- In 2020, a Google review stated that employees told them the phones in the rooms do not work."
- In 2020, a Google review said, "When we arrived the room looked half cleaned, with used condoms in the trash and on the floor."
- From 2016 to 2020, online reviews mention being able to hear everything from other rooms and people up all night."

**Local Defendants SeaTac Hotels and G6 Hospitality Property, and their agents and employees, acted as G6 Defendants' actual agents or subagents in managing, operating, and maintaining the subject properties.**

87. Upon information and belief, it is a standard practice in the hospitality industry, followed by all Defendants herein, for parent and brand companies to set exacting brand quality standards for branded properties reaching everything from the temperature at which coffee shall be served, to the number of pillows that are placed on the beds, to the types of payments accepted, how crime is prevented or dealt with if at all, and to when, where, and how guests are greeted.

88. G6 Defendants provide their franchisees and company-owned properties, including the subject Motel 6 locations, with signage on, throughout and in front of the building. This is done to assure customers that when they check in, they can expect an experience consistent with the standards of the G6 and Motel 6 brand. This brand logo is displayed on everything in the hotel,



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

such as on materials on the bedside table and staff uniforms worn at the front desk during check in. This was the case for the subject three Motel 6 locations during JANE MB DOE's trafficking.

89. G6 Defendants provide their hotel branded locations brand name recognition, a marketing campaign, and hotel listings in the Global Distribution System and other online agency databases. They also provide access to their brand- wide central reservation systems, 800 numbers, reporting numbers, online review systems, revenue management tools, brand loyalty programs, and company websites. Therefore, bookings and room reservations are primarily controlled by G6 Defendants. [48]

90. The G6 Defendants subject their franchisees and company-owned properties, including the subject Motel 6 locations, to detailed operational standards and requirements through franchise agreements, written policies and manuals, and various formal and informal directives, mandates, reporting obligations, and expectations. These requirements govern nearly every aspect of the Motel 6 locations' operations, including management, staffing, safety, maintenance, and customer service. The G6 Defendants draft, implement, and enforce these mandates and retain authority to dictate such terms as a condition of doing business under the G6 and Motel 6 brand. These control measures were in effect at all relevant times, including from 2011 to 2012, and both before and after that period.

91. Upon information and belief, G6 Defendants require their branded properties to use a property management system and did so at all relevant times. This system is linked to the G6 Defendants' corporate network and data center. This is to, among other things, receive reservations, manage clientele information, manage stay information, and process payment

---

[48] Ellen Meyer, *The Origins and Growth of Franchising in the Hotel Industry*, LODGING MAGAZINE (Apr. 10, 2018), The Origins and Growth of Franchising in the Hotel Industry (lodgingmagazine.com).



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

transactions.

92. Upon information and belief, per the relevant policies and franchise agreements, G6 Defendants, at all relevant times and currently, may enforce their brand standards through periodic and regular inspections of the hotel locations, backed up with the ultimate threat of termination of the agreement.[49]

93. G6 Defendants are vicariously liable for the acts, omissions, and knowledge of the three subject Motel 6 locations and staff of the locations named herein, which are G6 Defendants' actual agents or subagents.

94. Defendants are responsible for the acts, omissions, and knowledge of all employees and agents of the subject hotel locations when operating the hotel because these acts and omissions were committed in the course and scope of employment. Defendants ratified these acts and omissions because Defendants failed to exercise reasonable care in the hiring, training, and supervision of these employees given the specific risks known and reported to Defendants of sex trafficking occurring at the subject hotel locations; and Defendants failed to have repercussions and to terminate employment of employees and agents directly facilitating trafficking.

95. G6 Defendants obscure the full extent of control they exercise over the franchisees and company-owned properties by treating the manuals and certain policies as confidential and proprietary and prohibiting any public disclosure of those policies and manuals. Upon information and belief, the standards that G6 Defendants imposed on Local Defendants:

a. Did not merely identify quality or outcome standards but instead specifically controlled the means, methods, and tools Local Defendants used at their Motel 6

[49] Many of the franchise disclosure documents, which outline the policies and procedures of franchise agreements can be accessed publicly on https://fddexchange.com/view-fdd-docs.



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

locations;

b. Covered virtually all aspects of hotel operations, including internal operating functions and day to day operations;

c. Dictated the specific manner in which Local Defendants and hotel staff must carry out most day-to-day functions at their Motel 6 locations; and

d. Significantly exceeded what was necessary for G6 Defendants to protect its registered trademarks.

96. In addition to the ways described above, upon information and belief, G6 Defendants exercised and reserved the right to exercise systemic and pervasive control over Local Defendants' day-to-day operation of the subject Motel 6 locations named herein, including the following ways:

a. G6 Defendants required franchisees and management of Motel 6 hotels to participate in mandatory training programs, both during onboarding and on an ongoing basis. They retained control to mandate the trainings and they either completed the trainings and mandated completion or they knowingly and willingly chose not to enforce the mandate despite actual knowledge of sex trafficking at these three specific Motel 6 locations before and during Plaintiff's trafficking. This training covered all aspects of hotel operations, including aspects of hotel operations that go significantly beyond what would be necessary for G6 Defendants to protect their registered trademarks;

b. G6 Defendants provided training for hotel management and select hotel staff on-site at the Motel 6 locations selected by G6 Defendants;

c. G6 Defendants required all hotel staff to participate in training it created through an online learning platform it controlled and maintained;



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

d. G6 Defendants controlled training provided by franchisees and local owners to hotel staff by dictating the content of that training, providing required content for that training, and dictating the training methods used;

e. G6 Defendants retained sole discretion to determine whether all training had been completed satisfactorily;

f. For certain products and services that franchisees and local owners were required to purchase to operate the Motel 6 locations named herein, G6 Defendants designated approved vendors and prohibited franchisees from purchasing goods and services from anyone other than an approved vendor;

g. G6 Defendants required franchisees and local owners to sign a technology agreement governing the terms under which franchisees must procure and use technical services and software while operating the Motel 6 locations named herein. The subject Motel 6 locations were required to install, and use certain brands, types, makes, and/or models of hardware, software, peripheral equipment, and support services to perform internal operating functions at the hotel, including related to security;

h. G6 Defendants set required staffing levels for the Motel 6 locations named herein;

i. G6 Defendants established detailed job descriptions for all positions in its Motel 6 properties and drafted numerous, detailed policies that referenced these positions and dictated which positions must perform which tasks and how they must do so;

j. G6 Defendants set requirements for the hiring process used by franchisees and local owners and oversaw employee discipline processes and decisions;

k. G6 Defendants provided benefits for employees of franchised hotels;

l. G6 Defendants required the subject Motel 6 locations to use a customer resource



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

management program maintained and operated by the G6 Defendants;

m. G6 Defendants controlled channels for guests to report complaints or provide feedback regarding the Motel 6 locations and directly participated in the response and/or supervised the response to customer complaints or other feedback. G6 Defendants retained the right to provide refunds or other compensation to guests and to require Local Defendants to pay associated costs;

n. G6 Defendants generated reports and analysis of guest complaints and online reviews for the subject Motel 6 locations;

o. G6 Defendants required the subject Motel 6 locations to use a Guest Relations Application owned, operated, and maintained by G6 Defendants to manage all guest data and information. G6 Defendants could use the backend of this system to analyze data and generate reports;

p. G6 Defendants set detailed requirements for insurance that franchisees and local owners must purchase and retain the right to purchase insurance and bill for that insurance if G6 Defendants determine that the franchisees or local owners have not purchased adequate insurance;

q. G6 Defendants regularly audited and had access to the books and records of Local Defendants.

r. G6 Defendants conducted frequent and unscheduled inspections of Motel 6 properties, including the Motel 6 locations named herein;

s. G6 Defendants retained the right to issue fines, require additional training, to impose and supervise implementation of detailed corrective action plans, and to take other steps up to and including termination of the franchising agreements if franchisees



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

violated any of the G6 Defendants' detailed rules, expectations, protocols, or policies, including those that governed day-to-day operations of the Motel 6 locations named herein and the prevention or response to any crimes including sex trafficking;

t. G6 Defendants controlled all marketing for subject Motel 6 locations and prohibited local owners/franchisees from maintaining any online presence unless specifically reviewed and approved by the G6 Defendants;

u. G6 Defendants imposed detailed recordkeeping and reporting requirements on the subject Motel 6 locations regarding virtually all aspects of hotel operations

v. G6 Defendants supervised and controlled day-to-day operations of the Motel 6 locations named herein through detailed information and extensive reports that it obtained through the property management system and other software systems it required Local Defendants to use; and

w. G6 Defendants retained the virtually unlimited right to revise policies or adopt new requirements for the day-to-day aspects of hotel operations.

**<u>Defendants knowingly benefitted from their Participation in a Venture with Each Other and with Plaintiff's Traffickers</u>**

97. Defendants participated with each other in the operation of Motel 6 branded hotels, a "common undertaking or enterprise involving risk and potential profit." Defendants also participated in a venture with Plaintiffs trafficker and other traffickers by renting hotel rooms that were used for commercial sex purposes, and by operating their hotels in a manner that invited and enabled sex trafficking.

98. Defendants benefitted financially from their participation in the venture with each other and with JANE MB DOE's trafficker. Upon information and belief, at all times alleged herein



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

and currently, Local Defendants paid a percentage of their total revenue back to the franchisor and/or its parent companies, G6 Defendants, including revenue generated from renting rooms in which JANE MB DOE was sex trafficked.

99. Defendants profited from Plaintiff's sex trafficking by repeatedly renting motel rooms to Plaintiff and/or to her traffickers when they knew or should have known that the rooms would be used for sex trafficking.

100. Defendants benefited from the steady stream of income that Plaintiff's traffickers and other sex traffickers brought to their hotels and hotel brand through room rentals and related purchases.

101. Defendants profited from each and every room that Plaintiff's traffickers rented where Plaintiff was harbored, abused, drugged, beat, hit, raped and maintained for the purpose of sex trafficking.

102. Plaintiff's trafficking at the subject Motel 6 properties was only possible because Defendants participated in a venture with each other and with Plaintiff's criminal individual traffickers. If Defendants had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Plaintiff's trafficking at the subject hotel location and they could have prevented serious and permanent injuries to Plaintiff and several other victims.

**Defendants Facilitated Trafficking of Plaintiff**

103. During the times JANE MB DOE was trafficked at the subject properties, Defendants participated directly in most aspects of the operation of the subject Motel 6 properties for which they owned, had an ownership interest in, franchised and/or controlled that influenced whether and to what extent trafficking occurred at the hotels, including but not limited to the trafficking



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

of Plaintiff as follows:

a. Defendants assumed responsibility and control over the human trafficking response of their subject motel properties, including design and implementation of practices to prevent trafficking, safety, and security procedures, employee, and franchisee education, training and response, partnership with external organizations, and advocacy;

b. Defendants retained control over when its branded motel would share information with law enforcement and when law enforcement would be contacted about suspected criminal activity in their branded motel location;

c. Defendants retained control over determining which motels/hotels needed additional training or other resources on the risk of trafficking occurring and other related criminal activity based on actual activities and crimes known to have occurred at each;

d. Defendants retained control to terminate hotel staff and/or agreements based on the response to human trafficking;

e. Defendants determined whether the training is provided, when it is provided, the content of the training, how the training is delivered, who receives it, and the consequences of someone not participating or failing to follow such training; and

f. Defendants retained control over setting, supervision, overseeing, and enforcement policies and procedures for housekeeping services at the subject motel location, including how often rooms must be entered, how to respond to guest refusals of entry into rooms, and steps to monitor guest safety issues through housekeeping services;

104. Defendants provided the means, methods and a location for traffickers, including Plaintiff's traffickers, to traffic and sell victims for commercial sex and commit sex trafficking.



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

105. As a direct and proximate result of these egregious practices of Defendants, and each of them, JANE MB DOE and other victims of sex trafficking and exploitation have been permanently injured and damaged physically, emotionally, psychologically, and financially.

106. Defendants had both actual and constructive knowledge of the trafficking of JANE MB DOE at the hotel locations they owned and operated because the trafficking was the direct result of Defendants facilitating the trafficking at the subject locations.

107. Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the subject locations, Defendants continued renting rooms to these traffickers, including the rooms used to sexually exploit victims and JANE MB DOE.

108. Defendants knew or were willfully blind to the fact that JANE MB DOE was being trafficked and, despite this, benefited from continued association with her traffickers by providing them with a venue in the form of hotel rooms and related services, to harbor and facilitate the sexual exploitation of Plaintiff.

109. Defendants also facilitated widespread trafficking at their hotel locations, including the trafficking of JANE MB DOE in ways including: (1) allowing inappropriate and inadequate practices for hiring, training, supervising, managing and disciplining front line staff regarding issues related to human trafficking; (2) inadequate and inadequately enforced sex trafficking notice and training for hotel staff; (3) choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, laws, and/or applicable franchisor policies and procedures; and (4) implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff. This included, i.e. allowing traffickers to pay in cash,



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

providing unlimited clean towels and sheets, and not requiring hotel guests and visitors to provide identification.

**Defendants are Jointly and Severally Liable for the Trafficking of Plaintiff**

110. G6 Defendants, together with G6 Hospitality Properties and G6 franchisee SeaTac Hotels, engaged in a venture characterized by a common business enterprise, mutual profit-sharing, interdependent operations, and shared rights of control and management. As participants in this joint venture, G6 Defendants are vicariously liable for the wrongful acts and omissions of their co-venturers committed in furtherance of the venture's objectives.

111. Upon information and belief, the operation of the subject Motel 6 locations constituted a single, unified enterprise directed and controlled by the G6 Defendants, and each of them. The subject Motel 6 locations shared common parent entities, were subject to joint oversight and control, and operated as an integrated enterprise and/or alter egos of one another. Upon information and belief, G6 Defendants jointly owned, operated, managed, supervised, and controlled the subject Motel 6 locations. As members of an integrated enterprise and/or joint venture, each Defendant was jointly and severally responsible for ensuring compliance with all applicable laws and for the unlawful conduct that occurred at the subject properties.

**Defendants are Jointly and Severally Liable for Plaintiff's Damages**

112. JANE MB DOE was trafficked and regularly subjected to heinous abuse at each of the subject hotel locations. JANE MB DOE's trafficker regularly rotated between the above locations, visiting each Motel 6 on a monthly or close to monthly basis and staying for several days or weeks at a time. At Motel 6 she was raped and sexually assaulted repeatedly by countless men that paid her traffickers money to do so. However, her traffickers were not the only ones profiting from her relentless abuse. Defendants profited every night that JANE MB DOE was



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

held against her will as a minor and through force, fraud, and coercion at these properties through the rooms her traffickers booked and the goods and services that they purchased.

113. JANE MB DOE was subjected to the unimaginable horrors of human sex trafficking all within rooms controlled, advertised, branded, designed, offered, supervised, inspected, owned fully or in part, and rented out by Defendants.

114. Trapped in a cycle of exploitation and abuse, JANE MB DOE endured repeated sexual assaults, physical violence, psychological manipulation, and dehumanizing treatment at the hands of her traffickers and the hotels and its staff, including Defendants, that enabled her trafficking to continue within their premises. JANE MB DOE's daily existence was a living nightmare, filled with constant fear, pain, and humiliation. She was treated not as a human being with dignity and self-worth, but rather as an object to be sold and violated for monetary gain. As such, Plaintiff has suffered catastrophic noneconomic damages from this trauma that she will have to live with for the rest of her life.

115. JANE MB DOE has been robbed of the ability to ever lead a normal life. She is now and will always be plagued by nightmares, fears, uncontrollable triggers, subconscious and conscious reactions to triggers, anxiety, lack of optimism, stress, low self-esteem, low self-worth, insecurities, embarrassment, humiliation, sadness, and lack of confidence. She will never be the person she was before. She is stuck with physical, psychological, and scarring injuries for life. She will never be able to erase what happened to her.

116. The venture or ventures in which each Defendant participated were direct, legal, producing, and proximate causes of the injuries and damages to Plaintiff described herein.

117. Under the TVPRA and CAVRA, Defendants are jointly and severally liable for all damages that a jury awards Plaintiff for past and future injuries she suffered as a proximate result



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

of sexual exploitation and trafficking.

## VI. TOLLING OF LIMITATIONS

118. To the extent Defendants assert any affirmative defense based on the statute of limitations, Plaintiff invokes 18 U.S.C. § 2255(b), which provides that civil claims for personal injury of a trafficked minor, based on a violation of 18 U.S.C. section 1591, may be filed at any time. Accordingly, Plaintiff's claims against Defendants for trafficking when she was under 18 are not time-barred.

119. In the alternative, Plaintiff's claims under 18 U.S.C. § 1595(c) are timely because this action was brought within ten years of the date Plaintiff discovered, or reasonably should have discovered, that she was the victim of sex trafficking and that Defendants knowingly benefited from the venture.

120. Plaintiff JANE MBDOE invokes the federal discovery rule. From the time she was first trafficked in 2011 at the age of 14 until at least 2016, JANE MB DOE was under the continuous control of traffickers who drugged her with methamphetamines and cocaine, subjected her to threats, emotional manipulation, psychological abuse, and coercive control. These traffickers exercised dominion over every aspect of Plaintiff's life. As a result, Plaintiff lacked the ability to recognize, understand, or act upon the legal nature of her injuries, or to appreciate that her abuse was actionable against third-party hotel owners and operators who facilitated it.

121. While under the control of her traffickers, JANE MB DOE, through no fault of her own, did not know that she had been the victim of human trafficking as defined under the law. She did not understand that the abuse she suffered in the subject Motel 6 locations in Washington, was enabled by a legal "venture" in which the Defendants knowingly participated and financially benefited. She did not, and could not, discover the legal cause of her injuries more than ten years



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

before filing this action.

122. Plaintiff further invokes the doctrine of equitable tolling. As a direct consequence of being a trafficking victim, JANE MB DOE was subjected to extraordinary circumstances, including prolonged coercion, fear, drug dependency, and psychological trauma, which prevented her from pursuing her legal rights. Plaintiff remained under the mental and emotional control of her traffickers and was unable to safely investigate, understand, or act upon the violations of law that gave rise to her claims. These extraordinary barriers did not end more than ten years prior to the filing of this lawsuit.

123. While under her traffickers' control, Plaintiff could not have reasonably sought legal representation, filed a civil complaint, or even identified the individuals and entities responsible for facilitating her exploitation. Despite the exercise of reasonable diligence, Plaintiff could not have pursued these claims any earlier due to the compounded trauma, threats, and manipulation she endured.

124. JANE MB DOE's inability to recognize and act upon the legal cause of her injuries persisted long after she physically escaped her trafficker in 2016. Even after regaining physical freedom, Plaintiff remained psychologically captive suffering from severe post-traumatic stress, panic attacks, and dissociation triggered by reminders of her trafficker. For years, she lived in constant fear, unable to trust others or feel safe. It was not until approximately five years after her escape, when she experienced genuine love, stability, and acceptance from a partner and his family, that she began to rebuild some measure of safety and autonomy. During that time, she gradually came to understand that her persistent anxiety, depression, and night terrors were consequences of being trafficked and exploited at Defendants' hotels. Only then could JANE MB DOE meaningfully comprehend the connection between her trauma and Defendants'



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

participation in and benefit from the trafficking venture.

125. Plaintiff's increased insight did not resolve her trauma but explains why she could not have reasonably discovered the legal cause of her injuries sooner. Her continued psychological impairment, combined with ongoing symptoms of post-traumatic stress, further supports application of the federal discovery rule and equitable tolling.

126. To the extent Defendants assert an affirmative defense based on limitations, JANE MB DOE invokes the continuing-violation doctrine. The trafficking alleged herein constituted a continuous and unbroken venture beginning in or about 2011 and persisting through 2016. As part of that ongoing scheme, Plaintiff's traffickers repeatedly utilized Motel 6 properties in Washington in addition to other hotels. While this action asserts claims against Defendants for the period 2011-2012, the subsequent exploitation of Plaintiff at these and other hotels forms part of the same continuous venture and confirms the absence of any intervening cessation.

127. Defendants' conduct at the Washington Motel 6 locations, including repeatedly renting rooms (often for cash), providing operational cover, ignoring obvious red flags, and accepting gratuities for silence—was not episodic but comprised integral segments of the continuing trafficking venture. Each Motel 6 room rental, staff omission, and act of facilitation furthered the same ongoing commercial enterprise and forms part of a continuous violation, extending the limitations period. The fact that Plaintiff's traffickers continued exploiting Plaintiff at other hotel brands does not break continuity and, at minimum, further supports application of the discovery rule and equitable tolling.

## VII. CAUSES OF ACTION AGAINST DEFENDANTS

**1. Cause of Action: Perpetrator liability under 18 U.S.C §1595(a) based on violation of 18 U.S.C §1591(a) (Against All Defendants)**



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

128. Plaintiff realleges and incorporates by reference all preceding paragraphs of this complaint as though fully set forth herein.

129. Plaintiff is a victim of sex trafficking within the meaning of §1591 and 1595(a) and is thus entitled to bring a civil action under 18 U.S.C §1595(a) against the "perpetrator" of any violation of the TVPRA.

130. Defendants, and each of them, are perpetrators within the meaning of 18 U.S.C §1595(a) because they:

a. Violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, they harbored and maintained individuals, including Plaintiff, knowing or in reckless disregard of the fact that these individuals were caused to engage in commercial sex at the subject hotel properties as minors, or through the use of force, coercion, or fraud; and

b. Violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this Complaint, they knowingly benefited from participation in a venture, knowing or in reckless disregard of the fact that the venture was engaged in violations under 18 U.S.C §1591(a)(1) at its respective hotel properties.

131. Violations of 18 U.S.C §1595(a) by each of the Defendants as "perpetrators" operated jointly with other unlawful acts and omissions alleged in this Complaint, to cause Plaintiff to suffer substantial physical and psychological injuries and all other damages described herein as a direct and proximate result of being trafficked and sexually exploited at the Defendants' hotel properties.

**2. Cause of Action: Beneficiary Liability under §1595 (a) of the TVPRA (Against All Defendants)**



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

132. Plaintiff realleges and incorporates by reference all preceding paragraphs of this complaint as though fully set forth herein.

133. Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C §§ 1591 and 1595(a) and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the person or entity knew or should have known was engaged in a violation of the TVPRA.

134. Through acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other and with sex traffickers, including Plaintiff's traffickers, despite the fact that each defendant knew or should have known that these traffickers were engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2) at Defendants' properties, including the subject locations alleged in this Complaint. As more specifically alleged above, Defendants took part in a common undertaking and enterprise involving risk and potential profits, and here, actual profits resulted. Defendants' employees had a direct association with the traffickers and knowingly facilitated the traffickers, which, as shown more thoroughly in the incorporated allegations above, showed a continuous business relationship between the traffickers and Defendants such that the pattern of conduct appears to be a tacit agreement between them. Thus, Defendants are liable as a beneficiary under 18 U.S.C §1595(a).

135. Through the acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other and Plaintiff's traffickers in the operations of their respective hotel properties even though Defendants knew or should have known that this venture was violating 18 U.S.C §§ 1591(a) and 1595(a).

136. Violations of 18 U.S.C §1595(a) by Defendants as "beneficiaries" operated jointly with



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

other unlawful acts and omissions alleged in this Complaint, to cause Plaintiff to suffer substantial physical and psychological injuries and all other damages alleged herein because of being trafficked and sexually exploited at the Defendants' hotel properties.

**3. Cause of Action: 18 U.S.C § 2255 – Civil Remedy for Personal Injuries to a Minor (Against All Defendants)**

137. Plaintiff realleges and incorporates by reference all preceding paragraphs of this complaint as though fully set forth herein.

138. Plaintiff was a minor within the meaning of 18 U.S.C. § 2255(a) during the time she was trafficked at the subject Motel 6 locations, including from approximately 2011 to 2012, when she was between the ages of 14 and 16.

139. Plaintiff was the victim of multiple violations of federal law, including 18 U.S.C. § 1591.

140. As a result of these violations, Plaintiff suffered "personal injury" within the meaning of 18 U.S.C. § 2255(a), including emotional trauma, physical and sexual abuse, addiction, mental anguish, and lasting psychological harm.

141. At all relevant times, Plaintiff was a "person who has not attained the age of 18 years" under 18 U.S.C. § 1591(a)(2). Because Plaintiff was a minor at the time she was exploited, the law presumes that any commercial sex act involving her was induced by force, fraud, or coercion pursuant to 18 U.S.C. § 1591(c), as minors cannot legally consent to such acts.

142. Pursuant to 18 U.S.C. § 2255(a), Plaintiff is entitled to seek a civil remedy against any person or entity whose acts or omissions contributed to her abuse, exploitation, and trafficking in violation of Chapter 110 of Title 18.

143. Defendants, and each of them, knew or should have known that Plaintiff was a minor and/or being subjected to sex trafficking through force, coercion, fraud, and threats. JANE MB



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

DOE was visibly young, scantily dressed, and under the constant watch of her traffickers. Defendants' employees observed repeated patterns of male visitors entering and exiting Plaintiff's rooms, often leaving behind used condoms and other obvious signs of commercial sex activity. Plaintiff's traffickers returned after each sex act to collect money and were permitted to loiter and operate undisturbed. Some employees accepted tips in exchange for silence. At no time was JANE MB DOE asked for identification.

144. Through acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other and traffickers, including Plaintiff's traffickers, despite the fact that each defendant knew or should have known that these traffickers were engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2) at Defendants' properties, including the subject locations alleged in this Complaint. As more specifically alleged above, Defendants took part in a common undertaking and enterprise involving risk and potential profits, and here, actual profits resulted. Defendants' employees had a direct association with the traffickers and knowingly facilitated the traffickers, which, as shown more thoroughly in the incorporated allegations above, showed a continuous business relationship between the traffickers and Defendants such that the pattern of conduct appears to be a tacit agreement between them. Defendants knowingly benefited, financially or by receiving something of value, from participation in the trafficking venture. Defendants received rental income and other business profits from providing repeated room access and services to Plaintiff's traffickers at the subject Motel 6 locations.

145. Violations of 18 U.S.C. § 2255(a) by each of the Defendants operated jointly with the other unlawful acts and omissions alleged in this Complaint to directly and proximately cause Plaintiff to suffer substantial physical, psychological, and emotional injuries, as well as all other



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

damages described herein, arising from her sexual abuse and exploitation as a minor at Defendants' hotel properties.

**4. Cause of Action: Vicarious Liability for TVPRA and CAVRA Violation (Against All Defendants)**

146. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

147. Under the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595, the Child Abuse Victims' Rights Act (CAVRA), 18 U.S.C. § 2255(a), and federal common law, entities are vicariously liable for the acts and omissions of its agents, employees and all other members of the joint venture.

148. Under the TVPRA, CAVRA, and the federal common law, an entity is vicariously liable for the acts and omissions of its alter-egos.

149. Defendants SeaTac Hotels LLC, G6 Hospitality Property, LLC, and Motel 6 Operating, L.P.—acted as the actual agents of G6 Defendants when operating their respective subject Motel 6 properties identified herein and in committing the wrongful acts and inactions alleged herein.

150. Through the wrongful acts and omissions described throughout this Complaint, G6 Defendants exercised or retained the right to exercise systematic and day-to-day control over the means and methods used by Local Defendants to operate their respective subject Motel 6 properties.

151. G6 Defendants are vicariously liable for the TVPRA and CAVRA violations of their agents Local Defendants and the agents and employees of Local Defendants.

152. On information and belief, each of the G6 entities—G6 Hospitality LLC, G6 Hospitality IP, LLC, G6 Hospitality Property LLC, G6 Hospitality Purchasing LLC, and G6 Hospitality



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

Franchising LLC—participated in a joint venture with Local Defendants and/or SeaTac Hotels LLC for the operation of the subject Motel 6 locations. These joint ventures involved shared profits, mutual control over operations, and a common enterprise purpose. They functioned as a single integrated entity and/or as alter-egos of one another with each of their franchisees and are therefore each directly and proximately liable for the harms and damages caused to Plaintiff as a result.

## VIII. JOINT AND SEVERAL LIABILITY

153. Plaintiff realleges and incorporates the allegations in Paragraphs 1 through 154.

154. "Joint and several liability 'applies when there has been a judgment against multiple defendants.'"[50] If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recovers only once for the full amount.[51]

155. Federal law allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, without regard to his proportion of fault and even if the concurrent negligence of others contributed to the incident. [52]

156. Plaintiff alleges each Defendant should be held joint and severally liable to Plaintiff for the totality of her injuries and damages alleged herein.

## IX. DAMAGES

157. Defendants' wrongful acts and omissions described above, individually and collectively,

[50] *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220–21 (1994).

[51] See 735 ILCS 5/2-1117; see Restatement (Second) of Torts § 875 (1977); *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).

[52] *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256 (1979) (citations omitted); *Manganiello v. City of New York*, No. 07 Civ. 3644, 2008 WL 2358922 (S.D.N.Y. June 10, 2008), affirmed, 612 F.3d 149 (2nd Cir. 2010).



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

caused Plaintiff to sustain legal damages.

158. Plaintiff did suffer the following injuries as a direct and proximate result of Defendants', and each of their, wrongful actions and inactions alleged herein, and as such Plaintiff is entitled to be compensated for past and future personal injuries, non-economic damages, and economic damages, see, e.g., 18 U.S.C. §§ 1593, 1595, including:

a. actual damages;
b. direct damages;
c. incidental and consequential damages;
d. lost earnings and lost earnings capacity;
e. necessary medical expenses;
f. life care expenses;
g. physical pain and suffering;
h. physical impairment;
i. mental anguish and emotional distress damages (until trial and in the future);
j. restitution;
k. unjust enrichment;
l. disgorgement of profits, and
m. liquidated damages.

## X. PUNITIVE DAMAGES

159. Plaintiff is entitled to punitive damages under the applicable statutes against Defendants, and each of them, for each and every cause of action alleged herein, as a result of Defendants' outrageous, wanton, willful, and malicious conduct underlying Plaintiff's claims. See *Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011).



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

## XI. ATTORNEY FEES

160. Plaintiff is entitled to recover costs and reasonable, necessary, or customary attorneys' fees from Defendants under the applicable statutes. See 18 U.S.C. § 1595(a); 18 U.S.C § 2255.

161. All conditions precedent to Plaintiff's recovery of its costs and attorneys' fees have occurred or will occur prior to entry of judgment in this suit.

## XII. JURY DEMAND

162. Plaintiff requests a jury trial in this action.

## XIII. PRAYER

163. For these reasons, Plaintiff prays that this case be set for trial before a jury, and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendants jointly and severally, for:

a. all economic damages to which she is entitled;

b. all actual damages to which she is entitled;

c. all incidental and consequential damages to which she is entitled;

d. all mental anguish and emotional distress damages to which she is entitled;

e. all restitution damages to which she is entitled;

f. all disgorgement of profits to which she is entitled;

g. all unjust enrichment damages to which she is entitled;

h. all liquidated damages to which she is entitled;

i. exemplary, treble, and/or punitive damages;

j. attorneys' fees and costs of suit;

k. pre-judgment and post-judgment interest at the highest rate allowed by law; and

l. all other relief to which she is or may be entitled in law or in equity.



VAN LAW FIRM
9311 BRIDGEPORT WAY SW
LAKEWOOD, WA 98499
(360) 200-0000

DATED this 20th day of March, 2026.

**VAN LAW FIRM**

*/s/Burke Huber*
Sandy Van, WSBA #53745
Burke Huber, WSBA No. 60556
9311 Bridgeport Way SW
Lakewood, WA 98499
Tel. No.: (360) 200-0000
sandy@vanlawfirm.com
burke@vanlawfirm.com
filingwa@vanlawfirm.com
*Attorneys for Plaintiff*

**ABIR COHEN TREYZON SALO LLP**

Boris Treyzon, Esq. (SBN: 188893) (Pro Hac Vice Application Forthcoming)
Derek T. Braslow, Esq. (SBN: 355486) (Pro Hac Vice Application Forthcoming)
Pinar Kermani, Esq. (SBN: 355486) (Pro Hac Vice Application Forthcoming)
Jill Thompson, Esq. (SBN: 174105) (Pro Hac Vice Application Forthcoming)
Michael Zuzo, Esq. (SBN: 356667 (Pro Hac Vice Application Forthcoming)
16001 Ventura Blvd. Suite 200
Encino, CA 91436
Tel. No.: (424) 288-4367
btreyzon@actslaw.com
dbraslow@actslaw.com
pkermani@actslaw.com
jthompson@actslaw.com
mzuzo@actslaw.com
*Attorneys for Plaintiff*